# EXHIBIT A



2545 W Hillcrest Drive, Suite 215
Thousand Oaks, CA 91320
ampersandbiopharma.com

## EMPLOYMENT AGREEMENT

EMPLOYMENT AGREEMENT (this "Agreement") dated as of June 7, 2017 (the "Effective Date"), by and between Intellectual Property Associates, LLC dba Ampersand ("the "Company"), and SETH BRUNNER (the "Employee").

1.   Employment. THE COMPANY hereby employs THE EMPLOYEE to serve as DIRECTOR OF RESEARCH, TACTICAL for the COMPANY in accordance with the terms and provisions of this Agreement, and THE EMPLOYEE hereby accepts such employment with THE COMPANY.

2.   Term. The term of this Agreement shall commence on the Effective Date and shall continue until this Agreement is terminated as hereinafter provided.

3.   Compensation. As compensation for all services rendered by THE EMPLOYEE to THE COMPANY pursuant to this Agreement, THE EMPLOYEE will receive the following amounts during the term of this Agreement:

   a)   Base Salary: During the term of this Agreement, the Company shall pay Employee a base salary at the rate of $30,000 per annum (the "*Base Salary*"), which Base Salary will be reviewed annually by the supervisor and the senior management and may be adjusted from time to time during the term of this Agreement in the sole discretion of these executives. Such Base Salary shall be subject to tax withholding under applicable law, shall be prorated for partial years and shall be payable in periodic installments in accordance with the Company's usual payroll practice, as in effect from time to time.

   b)   Incentive Opportunity: An incentive plan for the Tactical Division will be created and detailed separately, but for the avoidance of confusion: this incentive plan will be based on an "incentive pool" for the Tactical Team. This "pool" will be based on total revenue and non-dilutive funding (e.g., research grants) At this time, the aggregate incentive opportunity "pool" will be comprised of warrants (equivalent to 10% of the revenue and non-dilutive funding awarded at current valuation) and cash compensation (equivalent to 5% of the revenue and non-dilutive funding). The objective is to reconcile and award this quarterly. The division of this "pool" will be based on management discretion. This incentive plan can be adjusted annually at management's discretion.

   c)   Stock Options: Employee is also awarded 200,000 shares of Company stock options, which will vest over 4 years with a one year cliff. That is, 25% will vest upon your first year employment anniversary and the remaining 75% will vest monthly over the remaining 36 months so long as Employee remains employed with Company. Employee is also awarded an additional 100,000 shares of Company stock options that will vest monthly over 48 months so long as Employee remains employed with Company.

4.   Vacation and Employee Benefits.

   (a)   Vacation. THE COMPANY has no official vacation policy. Please seek approval for vacation plans with your team and Company leadership at least 30 days in advance. Approval will not be unreasonably withheld as long as performance of job duties is not compromised.

(b)     <u>Benefits Generally</u>. The Employee shall be entitled to receive and participate in such employee benefits as THE COMPANY shall from time to time determine to provide to its employees generally.

5.      <u>Description of Duties</u>. During the term of this Agreement, THE EMPLOYEE shall be a DIRECTOR OF RESEARCH, TACTICAL for THE COMPANY and shall:

    (a)     Devote on a full-time basis all necessary time, best efforts, professional skills, attention and energies to the fulfillment of the duties customarily associated with such position and the accomplishment of the goals and objectives provided by your Manager, the CEO or Board of Directors of THE COMPANY to THE EMPLOYEE from time to time; and

    (b)     Perform additional tasks as asked for by your Manager, the CEO or Board of Directors; and

    (c)     Act in accordance herewith, and in all accounts be responsible and responsive to, your Manager, the CEO or Board of Directors of THE COMPANY.

6.      <u>General Services</u>. During the term of this Agreement, THE EMPLOYEE shall:

    (a)     Observe THE COMPANY's policies and standards of conduct, as well as customary standards of business conduct, including any standards prescribed by law or regulation;

    (b)     Perform his duties hereunder in a manner that preserves and protects THE COMPANY's business reputation; and

    (c)     Do all things and render such services as may be necessary or beneficial in carrying out any of the foregoing.

7.      <u>Nondisclosure of Proprietary or Confidential Information and Confidential Communications</u>. The Employee recognizes and acknowledges that the intellectual property, marketing plans and business strategy, the names and addresses of THE COMPANY's customers, the names and addresses of THE COMPANY's suppliers, trade secrets and any other confidential and proprietary information concerning the business or affairs of THE COMPANY (including but not limited to marketing and business plans and strategies) (hereinafter collectively referred to as the "Confidential Information") constitute a valuable, proprietary, special and unique asset of THE COMPANY's business. The Employee further recognizes and acknowledges that any communications, whether written, oral or otherwise, that THE COMPANY or any of THE COMPANY's employees has with THE COMPANY's existing or prospective customers and clients are extremely confidential (hereinafter the "Confidential Communications"). The term Confidential Information shall exclude any information that has been made public through no fault of THE EMPLOYEE.

The Employee shall not, for any reason whatsoever, during or after the termination of his employment with THE COMPANY, use, disclose or allow access to, for his own benefit or for that of another, the Confidential Information or the Confidential Communications (or any part thereof) to any person, firm, corporation, association or other entity for any reason or for any purpose whatsoever.

In the event of a breach or threatened breach by THE EMPLOYEE of the provisions of this Section, THE COMPANY shall be entitled to an injunction restraining THE EMPLOYEE from so using, disclosing or allowing access to, in whole or in part, the Confidential Information and the Confidential

Communications or from rendering any services to any person, firm, corporation, association or other entity to whom the Confidential Information or the Confidential Communications, in whole or in part, have been disclosed or are threatened to be disclosed. Nothing herein shall be construed as prohibiting THE COMPANY from pursuing any other remedies available to THE COMPANY for such breach or threatened breach, including, but not limited to, the recovery of damages and reasonable attorneys' fees from THE EMPLOYEE.

Upon termination of this Agreement by either party for any reason, THE EMPLOYEE shall return to THE COMPANY any of the Confidential Information, Confidential Communications, charts, company literature, reports, employer credit cards or other proprietary materials of THE COMPANY then in THE EMPLOYEE's possession and all other materials of THE COMPANY which the Board of Directors of THE COMPANY requests THE EMPLOYEE to so return.

This Section shall in all respects survive any termination of this Agreement and shall remain in full force and effect thereafter.

8.    <u>Covenant Not to Compete; Nonsolicitation of Employees and Customers</u>. The Employee agrees that during the Restricted Period (as defined below), he shall not (without the express prior written consent of the Board of Directors of THE COMPANY) directly or indirectly compete with THE COMPANY. In construing the foregoing prohibition, THE EMPLOYEE shall be deemed to be competing with THE COMPANY if he shall become self-employed in, or accept employment with, consult with, render services to or become associated with, own, manage, operate, join, control, or participate in the ownership, management, operation, or control of, or be connected in any material manner with, or directly or indirectly enter into the employment of, or make a substantial investment in, any corporation, partnership, proprietorship or other type of business organization or entity which engages in, any business (a "Competing Business") involving any lines of business which directly and materially compete with the lines of business in or with which THE COMPANY is then currently involved. The "Restricted Period" shall mean the period of THE EMPLOYEE's employment with THE COMPANY pursuant to this Agreement plus a period of one continuous year thereafter; *provided, however,* that if THE EMPLOYEE is terminated by THE COMPANY without cause or voluntarily terminates his own employment for Good Reason (as those terms are defined below), the Restricted Period shall be coincident with the Post-Termination Period, as defined in Section 13A.

The Employee further agrees that during his employment with THE COMPANY and for a period of one continuous year thereafter he shall not solicit any of THE COMPANY's employees, existing customers or prospective customers (of which THE EMPLOYEE is then currently aware), affiliated research institutions or scientists, on behalf of himself or any Competing Business.

This Section 8 shall in all respects survive any termination of this Agreement and shall remain in full force and effect during the period specified in this Section 8.

9.    <u>Assignment of Rights</u>. Any and all information, data, inventions, discoveries, materials, notebooks and other work product which THE EMPLOYEE conceives, develops or acquires during his employment with THE COMPANY, which directly or indirectly relates to work performed for THE COMPANY, shall be the sole and exclusive property of THE COMPANY. The Employee shall promptly execute any and all documents necessary and take such further actions as THE COMPANY may deem necessary to assign any and all of THE EMPLOYEE's right, title and interest in such property to THE COMPANY.

10.    <u>Intellectual Property</u>. During THE EMPLOYEE's work for at THE COMPANY, THE EMPLOYEE shall promptly assist with and execute any and all applications, assignments or other

documents which an officer or director of THE COMPANY shall deem necessary or useful in order to obtain and maintain patent, trademark or other intellectual property protection for THE COMPANY's products or services. After the termination date of his employment with THE COMPANY, THE EMPLOYEE shall use reasonable efforts to assist THE COMPANY on intellectual property matters as they relate to his employment, and THE COMPANY shall reasonably compensate THE EMPLOYEE for his time and expense.

11.   <u>Documents, Records, etc</u>. All documents, records, data, apparatus, equipment and other physical property, whether or not pertaining to Confidential Information, which are furnished to THE EMPLOYEE by THE COMPANY or are produced by THE EMPLOYEE in connection with THE EMPLOYEE's employment will be and remain the sole property of THE COMPANY. The Employee will return to THE COMPANY all such materials and property as and when requested by THE COMPANY. In any event, and whether or not THE COMPANY so specifically requests, THE EMPLOYEE will return all such materials and property immediately upon termination of THE EMPLOYEE's employment for any reason. The Employee will not retain any such material or property or any copies thereof after such termination.

12.   <u>Restricted Activities</u>. During the term of this Agreement, THE EMPLOYEE shall inform the company of any business activities or ventures outside of the business activities of THE COMPANY; THE COMPANY must consent to these activities, but will not unreasonably withhold consent (for example, THE COMPANY will evaluate based on confidentiality, competitive, and proprietary risks) as long as the business activities or ventures do not interfere with THE EMPOYEE's ability to meet THE EMPLOYEE's objectives; *provided, however,* that nothing in this Agreement shall be construed as preventing THE EMPLOYEE from engaging in passive investment activities or customary charitable activities.

13.   <u>At-Will</u>.   The term of this Agreement and Employee's employment is "at will," which means the Company does not guarantee Employee's employment for any specific period of time.   No one at the Company has the authority to change this arrangement, unless it is done by a written agreement that is signed by Employee and the CEO of the Company.   The first six (6) months of Employee's employment will be a probationary period.   During this probationary period the Company shall determine if Employee is suitable for the duties referred to in Section 5 above.   Both Employee and the Company have the choice of ending Employee's employment at any time, for any reason and without cause, with or without notice. Satisfying any probationary period, or meeting or exceeding performance standards will not change the "at will" nature of this Agreement or Employee's employment.   Upon termination of Employee, the Company will pay Employee's Base Salary (as defined below) and any earned incentive compensation up to the date of termination and Employee will not be entitled to receive any Base Salary or other benefits for any period after the date of termination, except for the right to receive benefits which have become vested under any benefit plan or to which Employee is entitled as a matter of law.

14.   <u>Litigation and Regulatory Cooperation</u>. During and after THE EMPLOYEE's employment, THE EMPLOYEE shall cooperate fully with THE COMPANY in the defense or prosecution of any claims or actions now in existence or which may be brought in the future against or on behalf of THE COMPANY which relate to events or occurrences that transpired while THE EMPLOYEE was employed by THE COMPANY. The Employee's full cooperation in connection with such claims or actions shall include, but not be limited to, being available to meet with counsel to prepare for discovery or trial and to act as a witness on behalf of THE COMPANY at mutually convenient times. During and after THE EMPLOYEE's employment, THE EMPLOYEE also shall cooperate fully with THE COMPANY in connection with any investigation or review of any federal, state or local regulatory authority as any such investigation or review relates to events or occurrences that transpired while THE EMPLOYEE was employed by THE COMPANY. THE COMPANY shall reimburse THE EMPLOYEE for any reasonable

out-of-pocket expenses incurred in connection with THE EMPLOYEE's performance of obligations pursuant to this Section 14.

16.    No Assignment. The Employee acknowledges that the services to be rendered by him pursuant to this Agreement are unique. Accordingly, THE EMPLOYEE shall not assign any of his rights or delegate any of his duties or obligations under this Agreement.

16.    Severability. Subject only to the reformation of time, geographical, and occupational limitations as set forth in the next section, all of the terms and provisions contained in this Agreement are severable and, in the event that any portion or provision of this Agreement (including, without limitation, any portion or provision of any section of this Agreement) shall to any extent be deemed unenforceable or invalid by a court of competent jurisdiction, then the remainder of this Agreement, or the application of such portion or provision in circumstances other than those as to which it is so declared unenforceable or invalid, shall not be affected thereby, and each portion and provision of this Agreement shall be valid and enforceable to the fullest extent permitted by law.

17.    Reformation of Time, Geographical, and Occupational Limitations. In the event that any provision in this Agreement is held to be unenforceable by a court of competent jurisdiction because it exceeds the maximum time, geographical, or occupational limitations permitted by applicable law, then such provision(s) shall be and hereby are reformed to the maximum time, geographical, and occupational limitations as may be permitted by applicable law.

18.    Specific Performance. Both parties recognize that the services to be rendered under this Agreement by THE EMPLOYEE are special, unique and of an extraordinary character, and that in the event of breach by THE EMPLOYEE of the terms or conditions of this Agreement to be performed by him, THE COMPANY shall be entitled, if it so elects, to institute and prosecute proceedings in any court of competent jurisdiction, either at law or in equity, to obtain damages for any breach of this Agreement to enforce the specific performance thereof by THE EMPLOYEE, or to enjoin THE EMPLOYEE from engaging in such activity, but nothing contained herein shall be construed to prevent such other remedy in the courts, in case of any breach of this Agreement by THE EMPLOYEE, as THE COMPANY may elect to invoke.

19.    California Law; Choice of Forum. This Agreement shall be governed, construed and interpreted by and in accordance with the laws of California, without reference to its principles of conflicts of laws. Any actions concerning enforcement of this Agreement or in any way relating to the subject matter of this Agreement shall be litigated only in California state or federal courts of proper jurisdiction and venue. Each party hereto expressly agrees to submit to such jurisdiction and venue for the purposes of this Agreement.

20.    Entire Agreement. This Agreement constitutes the entire agreement of the parties hereto, and replaces all prior agreements, promises, representations and understandings between THE COMPANY and THE EMPLOYEE whatsoever concerning the limited subject matter hereof (other than stock purchase or other equity arrangements). There are no other agreements, conditions or representations, oral or written, express or implied, which form the basis for this Agreement.

21.    Assignment; Successors and Assigns, etc. Neither THE COMPANY nor THE EMPLOYEE may make any assignment of this Agreement or any interest herein, by operation of law or otherwise, without the prior written consent of the other party; *provided, however,* that THE COMPANY may assign its rights under this Agreement without the consent of THE EMPLOYEE in the event that THE COMPANY shall effect a reorganization, consolidate with or merge into any other corporation, partnership, organization or other entity, or transfer all or substantially all of its properties or assets to any other

corporation, partnership, organization or other entity. This Agreement shall inure to the benefit of and be binding upon THE COMPANY and THE EMPLOYEE, their respective successors, executors, administrators, heirs, and permitted assigns.

22.    Modification. No waiver or modification of this Agreement or of any covenant, condition, or limitation contained herein shall be valid unless in a writing of subsequent date hereto and duly executed by the party to be charged therewith and no evidence of any waiver or modification shall be offered or received in evidence in any proceeding, arbitration, or litigation between the parties hereto arising out of or affecting this Agreement, or the rights or obligations of the parties hereunder, unless such waiver or modification is in writing, duly executed as aforesaid. The parties further agree that the provisions of this Section may not be waived except as herein set forth.

23.    Section Headings. The section headings contained in this Agreement are for convenience only, and shall in no manner be construed as part of this Agreement.

24.    Waiver of Breach. The waiver by either party of a breach or violation of any provision of this Agreement shall not operate as, or be construed to be, a waiver of any subsequent breach thereof.

25.    Notices. Any and all notices required or permitted to be given under this Agreement shall be sufficient if furnished in writing, sent by certified or registered mail, return receipt requested, in the case of notice to THE COMPANY, to THE COMPANY's executive offices, attention: Board of Directors, or in the case of notice to THE EMPLOYEE, to the most recent residence address of THE EMPLOYEE appearing in THE COMPANY's records, or to such other address as such party may specify in writing.

26.    Counterparts. This Agreement may be executed in any number of counterparts, each of which when so executed and delivered shall be taken to be an original; but such counterparts shall together constitute one and the same document.

        IN WITNESS WHEREOF, the parties have executed this Agreement on the day and year here above first written.

By: _____        _____
                                    The Company

By: _____        _____
                                    Employee

# EXHIBIT B

**NON-DISCLOSURE AGREEMENT**

THIS NON-DISCLOSURE AGREEMENT (the "Agreement") governs the disclosure of information by **Intellectual Property Associates, Inc./ Ampersand Biopharmaceuticals LLC** ("Company") to _____ ("Recipient") as of _____ (the "Effective Date") for the purpose of evaluating a potential business transaction between the parties (the "Purpose").

1.    **Confidential Information.** "Confidential Information" means any and all technical and non-technical information that Company provides Recipient, either directly or indirectly, whether in graphic, written, electronic or oral form, identified at the time of disclosure as confidential, or which by its context would reasonably be deemed to be confidential, including without limitation unpublished patent applications and other filings, trade secrets, and other proprietary information, as well as any ideas, techniques, works of authorship, models, inventions, know-how, processes, algorithms, software programs, software source documents, and formulae related to the current, future, and proposed products and services of Company, and also any information concerning any research, experimental work, development, design details and specifications, engineering, financial information, purchasing, customer lists, investors, employees, business and contractual relationships, business forecasts, sales and merchandising, marketing plans of Company and information Company provides regarding third parties. The Confidential Information includes the existence of this Agreement and the Purpose. The Confidential Information may also include information previously disclosed to Company by a third party.

2.    **Non-use and Nondisclosure.** Recipient agrees that at all times and notwithstanding any termination or expiration of this Agreement it will hold in strict confidence and not disclose to any third party any Confidential Information except as approved in writing in advance by Company, and will use the Confidential Information for no purpose other than the Purpose. Recipient shall take all reasonable steps to keep all Confidential Information strictly confidential. Recipient agrees to institute measures to protect the Confidential Information in a manner consistent with the measures it uses to protect its own most sensitive proprietary and confidential information, which must not be less than a reasonable standard of care. Without limiting the foregoing, Recipient shall only permit access to Confidential Information to those of its employees or authorized representatives having a need to know such information and who have signed confidentiality agreements or are otherwise bound by confidentiality obligations at least as restrictive as those contained herein. Recipient shall be responsible for the breach of this Agreement by its employees or authorized representatives. Recipient shall immediately notify Company upon discovery of any loss or unauthorized disclosure of the Confidential Information.

3.    **Restrictions on Use.** Recipient may not reproduce Confidential Information in any form except as required to accomplish the intent of this Agreement. Recipient shall not modify, reverse engineer, disassemble, decompile, create other works from or determine the composition of any formulations, prototypes, software or other tangible objects that embody Confidential Information and that are provided to Recipient hereunder. Any reproduction of any Confidential Information shall remain the property of Company and shall contain any and all confidential or proprietary notices or legends which appear on the original. Any notes that Recipient creates regarding the Confidential Information shall also be deemed Confidential Information.

In the course of Recipient's work and interactions with the company, Recipient may provide the company with advice that leads to new business ideas or technical innovations. By Recipient's signature below, Recipient hereby assigns to the company any results and work product resulting from the work and interactions with the company, including without limitation any business or technical innovations, original works of authorship, developments, concepts or inventions created for the company and hereby assign to the company, any proprietary or intellectual property rights therein. Recipient understands these rights are the property of and owned by the company. Recipient further understands that when applicable, such services shall be works for hire and Recipient hereby assigns these to the company to the extent necessary to give effect to the company's ownership thereof. Recipient understands that Recipient will not retain any rights to any product of service of, or any intellectual property rights derived or produced by, the company from or through the work and interactions with the company.

4.    **No Warranty.** All Confidential Information is provided "AS IS," without any warranty of any kind.

5.    **No License.** Recipient recognizes and agrees that nothing contained in this Agreement shall be construed as granting it any property rights, by license or otherwise, to any Confidential Information, or to any invention or any patent, copyright, trademark, or other intellectual property right that has issued or that may issue, based on such Confidential Information. Without limiting any other restriction set forth in this Agreement, Recipient shall not make, have made, use, import, offer to sell or sell for any purpose any product or service or other item

using, incorporating or derived from any Confidential Information, nor make any filing for or registration of any rights in or to any intellectual property right based on, incorporating or derived from any Confidential Information, absent separate written approval from Company, which approval may be granted or refused by Company in its sole discretion.

6.    **Injunctive Relief.** Recipient acknowledges that the Confidential Information constitutes valuable trade secrets and that release of Confidential Information in violation of this Agreement may cause irreparable harm for which Company may not be fully or adequately compensated by recovery of monetary damages. Accordingly, in the event of any violation or threatened violation by Recipient, Company shall be entitled to injunctive relief from a court of competent jurisdiction in addition to any other remedy that may be available at law or in equity, without the necessity of posting bond or proving actual damages.

7.    **Term and Termination.** This Agreement shall terminate three years after the Effective Date, or may be terminated by either party at any time upon thirty days written notice to the other party. Recipient's obligations under this Agreement shall survive termination of the Agreement between the parties and shall be binding upon the Recipient's heirs, successors and assigns. Upon termination or expiration of the Agreement, or upon the written request of Company at any time, Recipient shall promptly return to the Company or at Company's option destroy, all documents and other tangible materials representing the Confidential Information and all copies thereof. All back-up copies of Confidential Information stored electronically in Recipient's information systems stored electronically by Recipient must be destroyed upon request from Company and an authorized officer of Recipient must promptly certify in writing to Company that all such copies have been destroyed.

8.    **Miscellaneous.** This Agreement shall be governed by the laws of California, without reference to conflict of laws provisions. Recipient agrees that upon Company's request, all disputes arising hereunder shall be adjudicated in the state and federal courts having jurisdiction over disputes arising in Los Angeles, California, and Recipient hereby agrees to consent to the personal jurisdiction of such courts. This Agreement may not be amended, nor any provision waived, except by a writing signed by both parties hereto. If any provision of this Agreement is found by a proper authority to be unenforceable or invalid such unenforceability or invalidity shall not render this Agreement unenforceable or invalid as a whole and in such event, such provision shall be changed and interpreted so as to best accomplish the objectives of such unenforceable or invalid provision within the limits of applicable law or applicable court decisions and the remainder of the terms, provisions, covenants and restrictions of this Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated. The parties hereto agree that any rule of construction to the effect that ambiguities are to be resolved against the drafting party will not be applied in the construction or interpretation of this Agreement. Recipient may not assign or transfer this Agreement, or any rights or obligations under this Agreement, by change of control or otherwise, without the prior written consent of Company, which consent may be withheld in Company's sole discretion. Any such purported assignment without prior consent shall be null and void *ab initio* and shall be deemed a material breach of this Agreement. Recipient will not solicit or otherwise induce or attempt to induce for purposes of employment, any employees of Company during the term of this Agreement and for a period of one year thereafter. Recipient shall not export, directly or indirectly, any technical data acquired from Company pursuant to this Agreement or any product utilizing any such data to any country for which the U.S. Government or any agency thereof at the time of export requires an export license or other governmental approval without first obtaining such license or approval. All notices or reports permitted or required under this Agreement shall be in writing and shall be delivered by personal delivery, electronic mail, facsimile transmission or by certified or registered mail, return receipt requested, and shall be deemed given upon personal delivery, five days after deposit in the mail, or upon acknowledgment of receipt of electronic transmission. Notices shall be sent to the addresses set forth at the end of this Agreement or such other address as either party may specify in writing. Each party agrees that this Agreement does not create any obligation to pursue or negotiate any particular business transaction. This Agreement sets forth the complete, exclusive and final statement of the agreement between the parties as to the subject matter hereof and supersedes all prior and contemporaneous agreements, understandings, negotiations and discussions, whether oral or written, between the parties regarding such subject matter.

Recipient
By:_____
Name and Title: _____
Date:_____

# EXHIBIT C

**Statement Regarding**
**Employee Proprietary Information and Inventions Agreement**

Attached to this statement is your Employee Proprietary Information and Inventions Agreement (the "**Agreement**") with Intellectual Property Associates, LLC (the "**Company**").

Please take the time to review the Agreement carefully.  It contains material restrictions on your right to disclose or use, during or after your employment, certain information and technology learned or developed by you (either alone or jointly with others) during your employment.  The Company considers this Agreement to be very important to the protection of its business.

If you have any questions concerning the Agreement, you may wish to consult an attorney. Managers, legal counsel and others in the Company are not authorized to give you legal advice concerning the Agreement.

If you have read and understand the Agreement, and if you agree to its terms and conditions, please return a fully executed copy of it to the Company, retaining one copy for yourself.

**Reviewed And Understood:**

Date:  _____          _____
                                                          Employee Name


                                              _____
                                                          Employee Signature

# INTELLECTUAL PROPERTY ASSOCIATES, LLC

## EMPLOYEE PROPRIETARY INFORMATION AND INVENTIONS AGREEMENT

**1.** In consideration of my employment by Intellectual Property Associates, LLC, a California LLC having an address at 3657 E. Thousand Oaks Boulevard., Thousand Oaks, CA 91362 ("the Company"), I hereby agree to certain restrictions placed by the Company on my use and development of information and technology of the Company, as more fully set out below.

**2.** **At-Will Employment.** I acknowledge that the Company is an "at-will" employer and nothing in this agreement shall be construed to imply that the term of my employment is of any definite duration. My employment may be terminated with or without cause and with or without notice. No one other than an authorized officer of the Company has the authority to alter this arrangement, to enter into an agreement for employment for a specified period of time, or to make any agreement contrary to this policy, and any such agreement must be in writing and must be signed by an authorized officer of the Company and by the affected employee.

**3.** **Proprietary Information.**

(a) _Proprietary Information Defined._ I understand that the term "Proprietary Information" in this Agreement means any and all information, ideas and materials, in whatever form, tangible or intangible, whether disclosed to or learned or developed by me, pertaining in any manner to the business of or used by the Company (including, without limitation, any person or entity owned by, controlled by or affiliated with the Company) or to any other person or entity to whom or which the Company owes a duty of confidentiality, including, but not limited to, any trade secret, technical know-how, information, knowledge or data relating to the Company's past, present, planned or foreseeable business as more fully described in Schedule A attached hereto.

(b) Often, Proprietary Information will be stamped or otherwise marked "Confidential, "Proprietary," or with some similar designation. If any information or material is not so marked however and it meets the definition in the foregoing Section 3(a) above, it is still Proprietary Information. If I am uncertain as to whether particular information or materials are Proprietary Information, I will request the Company's written opinion as to their status. I understand that Proprietary Information does not include any information, idea or material that (i) is or becomes publicly known through lawful means and without breach of this Agreement by me; (ii) was rightfully in my possession or part of my general knowledge prior to my employment by the Company; or (iii) is disclosed to me without confidential or proprietary restrictions by a third party who rightfully possesses the information, ideas or materials (without confidential or proprietary restrictions) and did not learn of it, directly or indirectly, from the Company. Any information, idea or material will not be considered to be publicly known or in the public domain merely because it is embraced by more general information in my prior possession or the possession of others, or merely because it is expressed in public literature in general terms. Proprietary Information also does not include my general knowledge and skill obtained during the course of my employment.

(c) I acknowledge that all information generated, received or maintained by or for me on the premises or equipment of Company (including, without limitation, computer systems and electronic or voice mail systems) is Proprietary Information and the sole property of the Company, and I hereby waive any property or privacy rights I may have with respect to such information.

**4.** **Restrictions on Use and Disclosure.** I will not, during or at any time after the termination of my employment with the Company, use or reproduce any Proprietary Information, except

in the course of performing my duties as an employee of the Company.  I also will not disclose or deliver, directly or indirectly, any Proprietary Information to any person or entity, except in the course of performing my duties as an employee of the Company and with the Company's consent.  I will use my best efforts to prevent the unauthorized reproduction, disclosure or use of Proprietary Information by others.

     **5.**     **Creations.**

       (a)    <u>Assignment</u>.  I hereby assign, and agree to assign, to the Company, without additional compensation, my entire right, title and interest in and to (a) all Creations, and (b) all benefits, privileges, causes of action and remedies relating to the Creations, whether before or hereafter accrued (including, without limitation, the exclusive rights to apply for and maintain all such registrations, renewals and/or extensions; to sue for all past, present or future infringements or other violations of any rights in the Creation; and to settle and retain proceeds from any such actions).  The term Creations includes, but is not limited to, creations, inventions, works of authorship, ideas, processes, technology, formulas, software programs, writings, designs, discoveries, modifications and improvements, whether or not patentable or reduced to practice and whether or not copyrightable, that relate in any manner to the actual or demonstrably anticipated business or research and development of the Company or its affiliates, and that are made, conceived or developed by me (either alone or jointly with others), or result from or are suggested by any work performed by me (either alone or jointly with others) for or on behalf of the Company or its affiliates, (i) during the period of my employment with the Company, whether or not made, conceived or developed during regular business hours or (ii) after termination of my employment if based on Proprietary Information.  I agree that all such Creations are the sole property of the Company or any other entity designated by it, and, to the maximum extent permitted by applicable law, any copyrightable Creation will be deemed a work made for hire.  I UNDERSTAND THAT THIS PARAGRAPH DOES NOT APPLY TO ANY CREATION WHICH QUALIFIES FULLY UNDER THE PROVISIONS OF SECTION 2870 OF THE LABOR CODE OF THE STATE OF CALIFORNIA, A COPY OF WHICH IS ATTACHED TO THIS AGREEMENT AS <u>EXHIBIT 1</u>.  I understand that nothing in this Agreement is intended to expand the scope of protection provided me by Sections 2870 through 2872 of the California Labor Code.

       (b)    <u>Disclosure</u>.  I agree to disclose promptly and fully in writing to my immediate supervisor at the Company, with a copy to an administrator designated by the Company, and to hold in confidence for the sole right, benefit and use of Company, any and all Creations made, conceived or developed by me (either alone or jointly with others) during my employment with the Company, or within one (1) year after the termination of my employment if based on Proprietary Information, regardless of whether I believe the Creation qualifies fully under the provisions of Section 2870(a) of the California Labor Code.  Such disclosure will be received and held in confidence by the Company.  In addition, I agree to keep and maintain adequate and current written records on the development of all Creations made, conceived or developed by me (either alone or jointly with others) during my period of employment or during the one-year period following termination of my employment, which records will be available to and remain the sole property of the Company at all times.

       (c)    <u>Assist with Registration</u>.  I agree that I will, at the Company's request, promptly execute a written assignment of title for any Creation required to be assigned by this Section 5.  I further agree to perform, during and after my employment, all acts deemed necessary or desirable by the Company to assist it (at its expense) in obtaining and enforcing the full benefits, enjoyment, rights and title throughout the world in the Creation assigned to the Company pursuant to this Section 5.  Such acts may include, but are not limited to, execution of documents and assistance or cooperation in legal proceedings.  Should the Company be unable to secure my signature on any document necessary to apply for, prosecute, obtain, or enforce any patent, copyright, or other right or protection relating to any

Creation, whether due to my mental or physical incapacity or any other cause, I hereby irrevocably designate and appoint the Company and each of its duly authorized officers and agents as my agent and attorney-in-fact, to undertake such acts in my name as if executed and delivered by me, and I waive and quitclaim to the Company any and all claims of any nature whatsoever that I may not have or may later have for infringement of any intellectual property rights in the Creations. The Company will compensate me at a reasonable rate for time actually spent by me at the Company's request on such assistance at any time following termination of my employment with the Company.

(d)     License for Other Inventions. If, in the course of my employment with the Company, I incorporate into Company property an invention owned by me or in which I have an interest, the Company is hereby granted a nonexclusive, royalty-free, irrevocable, perpetual, world-wide license to make, modify, use, offer for sale, sell and import any invention as part of and in connection with the Company property.

6.     **Prior Creations.** All inventions, works of authorship, ideas, processes, technology, formulas, software programs, writings, designs, discoveries, modifications, improvements or other creations, if any, that I made, conceived or developed (either alone or jointly with others) prior to my employment by the Company (collectively, "Prior Creations") are excluded from the scope of this Agreement. Set forth on Schedule B attached hereto is a complete list of all such Prior Creations that are owned by me, either alone or jointly with others. I represent and covenant that such list is complete, and I understand that by not listing an invention, work of authorship, discovery, modification, improvement or other creation I am acknowledging that such creation was not made, conceived or developed before commencement of my employment with the Company. I agree to notify the Company in writing before I make any disclosure to, or perform any work on behalf of, the Company that appears to conflict with proprietary rights I claim in any Prior Creation. If I fail to give such notice, I agree that I will make no claim against the Company with respect to any such Prior Creation.

7.     **Confidential Information of Others.** I will not use, disclose to the Company or induce the Company to use any confidential, proprietary or trade secret information or material belonging to others which comes into my knowledge or possession at any time, nor will I use any such information or material in the course of my employment with the Company. Except as disclosed on Schedule B to this Agreement, I have no other agreements or relationships with or commitments to any other person or entity that conflict with my obligations to the Company as an employee of the Company or under this Agreement, and I represent that my employment will not require me to violate any obligation to or confidence with another. In the event I believe that my work at the Company would make it difficult for me not to disclose to the Company any confidential, proprietary or trade secret information or materials belonging to others, I will immediately inform my supervisor. I have not entered into, and I agree I will not enter into, any oral or written agreement in conflict with this Agreement.

8.     **Business Relationships.** I acknowledge that the Company's relationships with its employees, customers, vendors and service providers are valuable business assets. I agree that, during my employment and for one (1) year thereafter, I will not (for myself or for any third party) divert or attempt to divert from the Company any business, employee, customer, vendor or service provider, through solicitation or otherwise.

9.     **Government Contracts and Other Obligations.** I understand that the Company has or may enter into contracts with other persons or entities, including the United States government or its agents, under which certain intellectual property rights will be required to be protected, assigned, licensed, or otherwise transferred. I hereby agree to be bound by all such agreements, and to execute such other documents and agreements as are necessary to enable the Company to meet its obligations under any such contracts.

10.     **Return of Materials; Termination.**  I hereby acknowledge and agree that all property, including, without limitation, all source code listings, books, manuals, records, models, drawings, reports, notes, contracts, lists, blueprints, and other documents or materials and all copies thereof, all equipment furnished to or prepared by me in the course of or incident to my employment, and all Proprietary Information belonging to the Company will be promptly returned to the Company upon termination of my employment with the Company for any reason or at any other time at the Company's request.  Following my termination, I will not retain any written or other tangible material containing any Proprietary Information or information pertaining to any Creation.  I understand that my obligations contained in this Agreement will survive the termination of my employment and I will continue to make all disclosures required of me by Section 5(b) above.  I further agree not to use any Proprietary Information for my benefit or the benefit of others.  In the event of the termination of my employment, I agree, if requested by the Company, to sign and deliver the Termination Certificate attached as <u>Schedule C</u> hereto and incorporated herein.

11.     **Remedies.**  I recognize that nothing in this Agreement is intended to limit any remedy of the Company under the California Uniform Trade Secrets Act or other federal or state law, and that I could face possible criminal and civil actions resulting in imprisonment and substantial monetary liability if I misappropriate the Company's trade secrets.  In addition, I acknowledge that it may be extremely difficult to measure in money the damage to the Company of any failure by me to comply with this Agreement, that the restrictions and obligations under this Agreement are material, and that, in the event of any failure, the Company could suffer irreparable harm and significant injury and may not have an adequate remedy at law or in damages.  Therefore, I agree that if I breach any provision of this Agreement, the Company will be entitled to the issuance of an injunction or other restraining order or to the enforcement of other equitable remedies against me to compel performance of the terms of this Agreement without the necessity of showing or proving it has sustained any actual damage.  This will be in addition to any other remedies available to the Company in law or equity.

12.     **Miscellaneous Provisions.**

(a)     <u>Application of this Agreement</u>.  I hereby agree that my obligations set forth in Sections 3 and 5 hereof and the definitions of Proprietary Information and Creations contained therein shall be equally applicable to Proprietary Information and Creations relating to any work performed by me for the Company prior to the execution of this Agreement.

(b)     <u>Waiver of Limitations</u>.  I waive the benefit of any statute of limitations affecting my liability under this Agreement or the enforcement of the Agreement to the full extent permitted by law.

(c)     <u>No Waiver by Conduct or Prior Waiver</u>.  A party's delay, failure or waiver of any right or remedy under this Agreement will not impair, preclude, cancel, waive or otherwise affect such right or remedy or any subsequent rights or remedies that may arise.

(d)     <u>General Provisions</u>.  This Agreement constitutes the entire agreement between the Company and me relating generally to the same subject matter, replaces any existing agreement entered into by me and the Company relating generally to the same subject matter, and may not be changed or modified, in whole or in part, except by written supplemental agreement signed by me and the Company.  I agree that any subsequent change in my duties or compensation will not affect the validity or scope of this Agreement. If any provision of this Agreement is held invalid or unenforceable, the remainder of this Agreement will not fail on account thereof but will otherwise remain in full force and effect.  If any obligation in this Agreement is held to be too broad to be enforced, it will be construed to be enforceable to the full extent permitted by law.  The obligations of this Agreement will continue

beyond the termination of my employment and will be binding upon my heirs, executors, assigns, administrators, legal representatives and other successors in interest.  This Agreement will inure to the benefit of the Company, its successors, assigns and affiliates.  This Agreement will be governed by and construed in accordance with the laws of the State of California, without giving effect to its conflict of law rules.  This Agreement may be signed in two counterparts, each of which will be deemed an original and both of which will constitute one agreement.

       I HAVE READ THIS AGREEMENT CAREFULLY AND UNDERSTAND ITS TERMS.  I UNDERSTAND THAT I AM AN AT-WILL EMPLOYEE, AND THAT MY EMPLOYMENT MAY BE TERMINATED AT ANY TIME WITH OR WITHOUT CAUSE AND WITH OR WITHOUT NOTICE.  I HAVE COMPLETELY NOTED ON <u>SCHEDULE B</u> TO THIS AGREEMENT ANY PROPRIETARY INFORMATION, IDEAS, PROCESSES, INVENTIONS, TECHNOLOGY, WRITINGS, PROGRAMS, DESIGNS, FORMULAS, DISCOVERIES, PATENTS, COPYRIGHTS, OR TRADEMARKS, OR IMPROVEMENTS, RIGHTS, OR CLAIMS RELATING TO THE FOREGOING, THAT I DESIRE TO EXCLUDE FROM THIS AGREEMENT.  I HAVE ALSO NOTED ON <u>SCHEDULE B</u> TO THIS AGREEMENT ANY AGREEMENT OR RELATIONSHIP WITH OR COMMITMENT TO ANY OTHER PERSON OR ENTITY THAT CONFLICTS WITH MY OBLIGATIONS AS AN EMPLOYEE OF THE COMPANY.

Date:  _____          _____
                                                     Employee Name

                                         _____
                                                     Employee Signature

## SCHEDULE A

## EXAMPLES OF PROPRIETARY INFORMATION

Proprietary Information includes, but is not limited to, any of the following types of information, ideas and materials:

any trade secret; technical know-how; information; data; knowledge; idea; design; formula; schematics; instrument; product; machinery; project; equipment; document; file; photograph; computer printout; drawing; manual; sketch or other visual representation; data processing or computer software technique, program or system; biological, chemical, mechanical or other invention; improvement; discovery; composition; process; part of a process; manufacturing technique; book; notebook; paper; compilation of information; record; specification; operating method; patent disclosure or patent application; list or other written record used in the Company's business; information regarding the Company's financial condition; employee personnel files and compensation and other terms of employment of the Company's employees and consultants; names and practices of any customers or potential customers of the Company and its affiliates; names, marketing methods, operating practices and related data regarding the Company's existing and potential vendors, suppliers, distributors, joint venture partners, and affiliates; the marketing methods and plans of the Company and its affiliates, licensors and licensees and related data and prices at which the Company obtains or has obtained, or at which it sells or has sold, its products or services; research, development, manufacturing and sales plans, costs and receipts of the Company; any information of the type described above which the Company has a legal obligation to treat as confidential, or which the Company treats as proprietary or designates as confidential, whether or not owned or developed by the Company; and any other information, ideas or materials relating to the past, present, planned or foreseeable business, products, developments, technology or activities of the Company.

## SCHEDULE B

### Prior Knowledge of Proprietary Information;
### Prior Creations; Prior Commitments

**1.      EMPLOYEE'S DISCLOSURE OF PROPRIETARY INFORMATION**

**Except as set forth below, I acknowledge that at this time I know nothing about the business or Proprietary Information of the Company, other than information I have learned from the Company in the course of being hired (Check here _____ if continued on additional attached sheets):**

_____
_____
_____

**2.      EMPLOYEE'S DISCLOSURE OF PRIOR CREATIONS**

The following information is provided in accordance with Section 6 of the Company's Employee Proprietary Information and Inventions Agreement (the "Agreement") executed by me.

_____          I have made no inventions, discoveries or improvements prior to my employment with the Company that are owned by me, either alone or jointly with others.

_____          The following is a complete and current list of all inventions, discoveries, or improvements I have made, conceived, or first reduced to practice prior to my employment with the Company, that are owned by me, alone or jointly with others, which I desire to remove from the operation of the Agreement.  (Check here _____ _____if continued on additional attached sheets.)

_____
_____
_____

**3.      EMPLOYEE'S DISCLOSURE OF CONFLICTING AGREEMENTS**

The following information is provided in accordance with Section 7 of the Agreement:

_____          I am not party to any agreement or relationships with or commitments to any other person or entity that conflict with my obligations as an employee of the Company or under the Agreement.

_____          The following is a complete and current list of all agreements or relationships with or commitments to any other person or entity that conflict with my obligations as an employee of the Company under the Agreement.  (Check here _____ if continued on additional attached sheets.)

_____
_____
_____

Date: _____          _____
                                                                        Employee Name

                                                                        _____
                                                                        Employee Signature

**SCHEDULE C**
**TERMINATION CERTIFICATE CONCERNING**
**COMPANY'S PROPRIETARY INFORMATION AND CREATIONS**

This is to certify that I have returned all property of Intellectual Property Associates, LLC, a California LLC (the "Company"), including, without limitation, all source code listings, books, manuals, records, models, drawings, reports, notes, contracts, lists, blueprints, and other documents and materials, Proprietary Information, and equipment furnished to or prepared by me in the course of or incident to my employment with the Company, and that I did not make or distribute any copies of the foregoing.

I further certify that I have reviewed the Employee Proprietary Information and Inventions Agreement (the "Agreement") signed by me and that I have complied with and will continue to comply with all of its terms, including, without limitation, (i) the reporting of any idea, process, invention, technology, writing, program, design, formula, discovery, patent, copyright, or trademark, or any improvement, rights, or claims related to any and all Creations, conceived or developed by me and covered by the Agreement and (ii) the preservation as confidential of all Proprietary Information pertaining to the Company.  This certificate in no way limits my responsibilities or the Company's rights under the Agreement.

On termination of my employment with the Company, I will be employed by _____ **[Name of New Employer] [in the** _____ **division]** and I will be working in connection with the following projects:

**[generally describe the projects]**

_____
_____
_____
_____

Date: _____     _____

Employee Name

_____

Employee Signature

**EXHIBIT 1**

**CALIFORNIA LABOR CODE
SECTION 2870-2872**

2870. (a) Any provision in an employment agreement which provides that an employee shall assign, or offer to assign, any of his or her rights in an invention to his or her employer shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities, or trade secret information except for those inventions that either:

Relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or

Result from any work performed by the employee for the employer.


(b) To the extent a provision in an employment agreement purports to require an employee to assign an invention otherwise excluded from being required to be assigned under subdivision (a), the provision is against the public policy of this state and is unenforceable.

2871. No employer shall require a provision made void and unenforceable by Section 2870 as a condition of employment or continued employment.  Nothing in this article shall be construed to forbid or restrict the right of an employer to provide in contracts of employment for disclosure, provided that any such disclosures be received in confidence, of all of the employee's inventions made solely or jointly with others during the term of his or her employment, a review process by the employer to determine such issues as may arise, and for full title to certain patents and inventions to be in the United States, as required by contracts between the employer and the United States or any of its agencies.

2872. If an employment agreement entered into after January 1, 1980, contains a provision requiring the employee to assign or offer to assign any of his or her rights in any invention to his or her employer, the employer must also, at the time the agreement is made provide a written notification to the employee that the agreement does not apply to an invention which qualifies fully under the provisions of Section 2870. In any suit or action arising thereunder, the burden of proof shall be on the employee claiming the benefits of its provisions.