### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SETH BRUNNER, an individual | |
| Plaintiff, | C.A. No. 1:19-cv-01663-MN |
| v. | |
| DYVE BIOSCIENCES, INC., | **JURY TRIAL DEMANDED** |
| Defendant. | |

### BRUNNER'S ANSWER TO DEFENDANT AND
### COUNTERCLAIM PLAINTIFF DYVE BIOSCIENCES, INC.

Plaintiff Seth Brunner ("Brunner"), an individual, by and through his undersigned attorneys, answers the Counterclaims of Defendant Dyve Biosciences, Inc. ("Dyve") by corresponding paragraph number as follows:

### NATURE OF THE ACTION

1. Brunner admits that Dyve purports to counterclaim against Brunner, but denies Dyve is entitled to any relief on these grounds.

2. Brunner admits that Dyve is a company in the business of creating topical pharmaceuticals for a broad spectrum of patient populations. Except as thus expressly admitted, Brunner denies the allegations contained in paragraph 2 of Dyve's counterclaims.

3. Brunner admits he was hired by Dyve in June 2017. Except as thus expressly admitted, Brunner denies the allegations contained in paragraph 3 of Dyve's counterclaims.

4. Denied.

5. Denied.

1

6. Brunner admits that Dyve terminated his employment on Sept. 10, 2018. Except as thus expressly admitted, Brunner denies the allegations contained in paragraph 6 of Dyve's counterclaims.

7. Brunner admits he has filed suit against Dyve seeking ownership rights in three patent applications. Except as thus expressly admitted, Brunner denies the allegations contained in paragraph 7 of Dyve's counterclaims.

## NATURE OF THE ACTION

8. Admitted.

9. Upon information and belief and according to its Counterclaims, Dyve is f/k/a Ampersand Pharmaceuticals, Inc. and f/k/a Intellectual Property Associates LLC, and is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 2545 West Hillcrest Drive, Suite 215, Thousand Oaks, CA 91320.

10. Brunner admits that the patent portfolio at issue has efficacy for several indications including gout and melasma. Brunner admits that the technology at issue could improve topical drug delivery significantly for a variety of patient populations, including people who suffer from gout, melasma, and those who have trouble tolerating drug delivery through pills or needles. Except as thus expressly admitted, Brunner denies the allegations contained in paragraph 10 of Dyve's counterclaims.

## JURISDICTION AND VENUE

11. Admitted.

12. Brunner admits this Court has jurisdiction over him because he has consented to jurisdiction by asserting a claim regarding the patent applications at issue. Except as thus

expressly admitted, Brunner denies the allegations contained in paragraph 12 of Dyve's counterclaims.

13. Brunner admits venue is appropriate in this judicial district. Except as thus expressly admitted, Brunner denies the allegations contained in paragraph 13 of Dyve's counterclaims.

## JURISDICTION AND VENUE

**A.** To the extent this subheading requires a response, Brunner admits that Brunner was hired by Dyve.

14. Brunner admits Dyve hired Brunner in June 2017. Brunner lacks knowledge as to Dyve's state of mind, and therefore except as expressly admitted, Brunner denies the allegations contained in paragraph 14 of Dyve's counterclaims.

15. The allegations in paragraph 15 of Dyve's counterclaims are not directed to Brunner, and therefore, do not require a response.

16. The allegations in paragraph 16 of Dyve's counterclaims are not directed to Brunner, and therefore, do not require a response. To the extent a response is required, Brunner admits Dyve was interested in pursuing potential grant opportunities, and except as thus expressly admitted, Brunner denies the allegations contained in paragraph 16 of Dyve's counterclaims.

17. Brunner admits that Kfoury offered to split his prospective salary. Brunner lacks knowledge as to Dyve's or Kfoury's actions or states of mind, and therefore except as expressly admitted, Brunner denies the allegations contained in paragraph 17 of Dyve's counterclaims.

18. Denied.

19. Brunner admits he wanted to finalize an employment agreement with Dyve before starting work. Except as thus expressly admitted, Brunner denies the allegations contained in paragraph 19 of Dyve's counterclaims.

20. Brunner admits he sent an email to Ryan Beal on May 7, 2017. Except as thus expressly admitted, Brunner denies the allegations contained in paragraph 20 of Dyve's counterclaims.

21. Denied.

22. Brunner admits that he engaged in negotiations with Dyve regarding an employment agreement. Except as thus expressly admitted, Brunner denies the allegations contained in paragraph 22 of Dyve's counterclaims.

23. Brunner admits that Beal emailed Brunner a version of an employment agreement. Except as thus expressly admitted, Brunner denies the allegations contained in paragraph 23 of Dyve's counterclaims.

24. Brunner admits he met with Beal on June 8, 2017. Except as thus expressly admitted, Brunner denies the allegations contained in paragraph 24 of Dyve's counterclaims.

25. Brunner admits Kfoury sent an email to on June 8, 2017. Except as thus expressly admitted, Brunner denies the allegations contained in paragraph 25 of Dyve's counterclaims.

B. To the extent this subheading requires a response, Brunner denies this subheading. Brunner did not have an employment agreement with Dyve.

26. Denied.

27. Denied.

28. Denied.

29. Denied.

30. Denied.

31. Denied.

32. Denied.

33. Denied.

34. Denied.

35. Brunner admits Barbara Prusinki called a meeting on January 10, 2018. Except as thus expressly admitted, Brunner denies the allegations contained in paragraph 35 of Dyve's counterclaims.

36. Denied.

**C.** To the extent this subheading requires a response, Brunner admits he worked at Dyve.

37. Denied.

38. Brunner admits that in June 2018 he spoke with R&D Incentives Group. Brunner lacks knowledge regarding Dyve's engagement of RDIG, including the reasons for Dyve's engagement of RDIG. Except as thus expressly admitted, Brunner denies the allegations contained in paragraph 38 of Dyve's counterclaims.

39. Brunner lacks knowledge regarding the survey provided by RDIG, and thus denies the same. Brunner denies the rest of the allegations contained in paragraph 39 of Dyve's counterclaims.

40. Denied.

41. Brunner admits that Dyve and Brunner began to discuss salary levels, bonus structures, and additional option grants in or around February 2018. Except as thus expressly

admitted, Brunner lacks knowledge regarding Dyve's state of mind, and thus denies the allegations contained in paragraph 41 of Dyve's counterclaims.

42. Brunner admits that in or around February 2018 he began discussing a job description for the work he was doing at that time.

43. Brunner admits that an email was sent on March 23, 2018. Except as thus expressly admitted, Brunner denies the allegations contained in paragraph 43 of Dyve's counterclaims.

44. Brunner admits he and Dyve were communicating regarding employment duties and responsibilities. Except as thus expressly admitted, Brunner denies the allegations contained in paragraph 44 of Dyve's counterclaims.

45. Brunner admits he and Dyve were communicating regarding employment duties and responsibilities. Except as thus expressly admitted, Brunner denies the allegations contained in paragraph 45 of Dyve's counterclaims.

46. Brunner admits Dyve offered to pay for a limited amount of an attorney's time. Except as thus expressly admitted, Brunner denies the allegations contained in paragraph 46 of Dyve's counterclaims.

47. Brunner admits he was provided with an offer on August 4, 2018. Brunner lacks knowledge of Beal's and Dyve's state of mind, and therefore except as expressly admitted, Brunner denies the allegations contained in paragraph 47 of Dyve's counterclaims.

48. Denied.

**D.** To the extent this subheading requires a response, Brunner admits Dyve terminated his employment.

49. Denied.

50. Denied.

51. Denied.

52. Brunner lacks knowledge of Prusinki's responsibilities, and thus denies the allegations of paragraph 52 of Dyve's counterclaims.

53. Brunner lacks knowledge of Prusinki's observations, and thus denies the allegations of paragraph 53 of Dyve's counterclaims.

54. Brunner lacks knowledge of Prusinki's observations, and thus denies the allegations of paragraph 54 of Dyve's counterclaims.

55. Denied.

56. Brunner admits that Dyve terminated Brunner's employment on Sept. 10, 2018. Except as thus expressly admitted, Brunner denies the allegations contained in paragraph 56 of Dyve's counterclaims.

57. Denied.

**E.** To the extent this subheading requires a response, Brunner admits Dyve filed patent applications but denies Dyve is the owner of them.

58. Admitted.

59. Admitted.

60. Denied.

61. Denied.

62. Denied.

63. Brunner admits that on Sept. 5, 2019 Brunner filed suit against Dyve in this Court asserting ownership rights in the patent applications. Except as thus expressly admitted, Brunner denies the allegations contained in paragraph 63 of Dyve's counterclaims.

## COUNT I
## (BREACH OF CONTRACT)

64. Brunner incorporates his responses to paragraphs 1-63 of Dyve's counterclaims as if fully set forth herein.

65. Denied.

66. Denied.

67. Denied.

68. Denied.

69. Denied.

70. Denied.

71. Denied.

72. Denied.

73. Denied.

## COUNT II
## (DECLARATORY JUDGMENT)

74. Brunner incorporates his responses to paragraphs 1-73 of Dyve's counterclaims as if fully set forth herein.

75. Denied.

76. Denied.

77. Denied.

78. Denied.

79. Admitted.

80. Denied.

8

## AFFIRMATIVE DEFENSES

Brunner asserts the following affirmative defenses without assuming the burden of proof or persuasion as to such defenses that would otherwise rest on Counterclaim-Plaintiff.

### First Affirmative Defense

Dyve's First Counterclaim fails to state a claim on which relief may be granted.

### Second Affirmative Defense

Dyve's counterclaims are barred by 35 U.S.C. § 261 and related statutes and regulations because Dyve has failed to adequately allege any written contract between Dyve and Brunner.

### Third Affirmative Defense

Dyve's counterclaims are barred because no contract or NDA existed between Dyve and Brunner.

### Fourth Affirmative Defense

Dyve's First Counterclaim for damages is barred because its alleged damages, if any, are speculative and uncertain, and because of the impossibility of ascertaining and allocating these alleged damages.

### Fifth Affirmative Defense

Dyve's Counterclaims are barred, in whole or in part, by the equitable doctrines of waiver and/or estoppel.

### Sixth Affirmative Defense

Dyve's Counterclaims are barred, in whole or in part, by the equitable doctrine of laches.

### Seventh Affirmative Defense

Dyve's Counterclaims are barred, in whole or in part, because Dyve has failed to take appropriate and necessary steps to mitigate its alleged damages, if any.

### Eighth Affirmative Defense

Dyve's Counterclaims are barred, in whole or in part, by the doctrine of unclean hands and/or the doctrine of *in pari delicto*.

### Ninth Affirmative Defense

Dyve's Counterclaims are barred, in whole or in part, because Dyve would be unjustly enriched if it was allowed to recover any part of the damages alleged.

### Tenth Affirmative Defense

Dyve's Second Counterclaim is barred because Brunner was not hired by Dyve to invent.

### Defenses Reserved

The foregoing affirmative defenses are raised by Brunner without waiver of any other defenses that may come to light during the discovery proceedings in this case or otherwise. Brunner hereby reserves the right to amend or supplement its Answer to Dyve's Counterclaims to assert any other related defenses as they become available.

### DEMAND FOR JURY TRIAL

Brunner demands a trial by jury on all issues so triable.

### REQUEST FOR RELIEF

WHEREFORE, Brunner prays that this Court will:

A. Dismiss Dyve's counterclaims against Brunner with prejudice;

B. Hold that Dyve is not entitled to any relief, whether in law, equity, or otherwise, on its counterclaims against Brunner;

C. Declare that Brunner is the owner of the '387, '357 and '358 patent applications, or in the alternative, declare that Brunner is the joint owner of the '387, '357 and '358 patent applications;

    D.      Declare that Dyve is estopped from asserting any claim inconsistent with Brunner's ownership of the '387, '357 and '358 patent applications, and the technology and inventions underlying and disclosed therein;

    E.      Issue a permanent injunction enjoining Dyve from further actions inconsistent with Brunner's ownership and rights to the disputed applications and any resulting technologies;

    F.      Issue an order finding that this case is exceptional and awarding Brunner his respective costs and expenses, including reasonable attorneys' fees, in accordance with the provisions of 35 U.S.C. § 285 or other statutes; and

    G.      Award Brunner any other relief, in law and in equity, to which the Court finds Brunner is justly entitled.

Dated: November 20, 2019

| OF COUNSEL | BAYARD, P.A. |
|---|---|
| | |
| Dorian S. Berger | /s/ *Stephen B. Brauerman* |
| Daniel P. Hipskind | Stephen B. Brauerman (#4952) |
| Eric B. Hanson | 600 N. King Street, Suite 400 |
| BERGER & HIPSKIND LLP | P.O. Box 25130 |
| 9538 Brighton Way, Ste. 320 | Wilmington, Delaware 19801 |
| Beverly Hills, CA 90210 | (302) 655-5000 |
| (323) 886-3430 | sbrauerman@bayardlaw.com |
| dsb@bergerhipskind.com | |
| dph@bergerhipskind.com | *Attorneys for Plaintiff Seth Brunner* |
| ebh@bergerhipskind.com | |

11